The ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, a Corporation, Appellant,

v.

Porter BARRETT, Appellee.

No. 15348.

United States Court of Appeals Ninth Circuit.

June 27, 1957.

Rehearing Denied Aug. 6, 1957.

Louis M. Welsh, Robert W. Walker, Los Angeles, Cal., for appellant.

Erwin P. Werner, Los Angeles, Cal., for appellee.

Before LEMMON, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

Plaintiff recovered a judgment in the District Court under the provisions of the Federal Employers' Liability Act,[1] for head injuries suffered on March 11, 1955, while working as a waiter aboard one of appellant's trains. The distinctive manifestation of plaintiff's alleged injury was a jerking or twisting of the head, medically described as a "spasmodic torticollis." This occurred with varying frequency, usually every few seconds. It apparently was pronounced enough during the trial to impress the jury, for it awarded him $12,500. Plaintiff had lost no time from work after the accident, and sought no medical care for over a month after it. The jerking allegedly started about three months after the accident.

Plaintiff was observed by defendant's counsel after the trial, and the jerking or twitching appeared to have stopped. Plaintiff was placed under observation by under-cover operatives employed by the defendant, who took some motion pictures indicating that the twitching or jerking was no longer evident, at least during a two hour period. Plaintiff discovered he was being "tailed," and the jerking again manifested itself.

1. 45 U.S.C.A. § 51 et seq.

After the time to file a motion for new trial had expired, under-cover operators for the defendant again took motion pictures which indicated plaintiff had apparently recovered from the twitching.

By deposition taken before trial, plaintiff testified he had no control over the twitching, that he was seldom without it, though unaware whether or not he was twitching. If defendant was not suspicious of plaintiff's claims immediately upon their being made, it most assuredly was after the medical expert of its choice made his report to the defendant, subsequent to his examination of plaintiff on April 10, 1956.[2] The defendant's medical expert was not called as a witness. Very understandably, this decision was dictated by sound trial strategy. But sometimes trial strategy involves calculated risks.

The motion pictures in evidence were viewed by the trial court, and by this Court. The entire seven Exhibits show plaintiff for approximately fourteen minutes of film coverage during four and one-half hours of personal observation on several days. The pictures raise grave suspicion of the legitimacy of plaintiff's complaint, but they are far from conclusive.

Another unusual factor in the case was the strong interest displayed in it by Dr. Darrington Weaver, who was present during at least part of the trial, and aided plaintiff in collecting the judgment after trial. He had referred plaintiff to a specialist, but had neither treated nor prescribed for plaintiff. Dr. Weaver is not unknown to the negligence trial bar of Los Angeles County. In 1942 he had been convicted on thirteen counts contained in two informations of violating § 556 of the California Insurance Code,[3] one count of subornation of perjury, one count of perjury, and one count of forgery. For the amazing story, see People v. Weaver, 56 Cal.App.2d. 732, 133 P.2d 818.

Relying on the record now on appeal, as briefly highlighted above, counsel for appellant moved to vacate and set aside the judgment pursuant to Rule 60(b)[4] of the Federal Rules of Civil Procedure, on the grounds that the judgment had been obtained by fraud, misrepresenta-

---

2. "The general physical examination reveals a mild hypertensive reaction and slight elevation of the pulse rate and temperature in a well-developed, well-nourished, negro who frequently turns his head rapidly to the right and shakes it, or shakes it without rotating it to the right, blinks and grimaces. The ophthalmoscopic examination is negative. The neurologic examination discloses tubular visual fields which are due to mental rather than physical causes. In other respects the examination is objectively negative. No hypertrophy of the sternocleidomastoid or trapezius muscles is seen.

From these data it would appear that as a result of the accident of February 11, (sic) 1955, the patient sustained a contusion of the scalp without losing consciousness. The evolution of his symptoms was gradual and unquestionably was aggravated by resentment toward an official in the Commissary Department of the Railway of Chicago. The clinical picture is not that of spasmodic torticollis but rather of habit spasms. In my opinion Mr. Barrett's symptoms are due entirely to mental causes. In this case set-tlement of litigation may be expected to be followed by his prompt recovery." [Tr. p. 61]

3. California Insurance Code, Section 556, provides:
"It is unlawful to:
"(a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance.
"(b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim."

4. Rule 60(b), of the Federal Rules of Civil Procedure, 28 U.S.C.A., reads (in pertinent part):
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, * * * for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * or (6) any other reason justifying relief from the operation of the judgment. * * * *"

tion and other misconduct. This motion was denied by the trial court.

The trial judge stated, when denying appellant's motion below, that though "there are some strange things in it," he could not be sure that the jury would return a different verdict had "these facts" been presented to it.

Appellant urges the trial court erred (a) in failing to find "fraud, misrepresentation and other misconduct"; (b) in failing to find "other reasons" justifying relief from the judgment; (c) in applying the criteria applicable for determining a motion for a new trial, rather than criteria for relief from judgment under Rule 60(b).

We can agree with many of the principles of law cited, and maintained for, by appellant. Judgments obtained through fraud, misrepresentation or other misconduct should be vacated, by use of Rule 60(b) of the Federal Rules of Civil Procedure. That rule is remedial and should be liberally construed. Where perjury has played some part in influencing the court or jury to render a judgment, the effect of the perjury will not be weighed on a motion to set aside the judgment.

The difficulty here, is the factual question—was there perjury? And was the judgment obtained by fraud, misrepresentation or other misconduct of plaintiff?

A psychosomatic injury may be as real as one induced by trauma. "Litigation neurosis" is accepted as a medical fact, particularly by those neurological physicians and practitioners of psychosomatic medicine most closely associated with forensic medicine.

Can we say the action of the trial court was an abuse of discretion? We are frank to state that had the able trial judge determined that fraud or other misconduct existed to grant appellant relief under Rule 60(b), we would not have disturbed that conclusion, on the record before us. While the remedial statute is to be liberally construed, there still exists a definite burden on the moving party to prove the existence of the fraud, or other misconduct, or other cause for relief. Parker v. Checker Taxi Co., 7 Cir., 1956, 238 F.2d 241; Federal Deposit Ins. Corp. v. Alker, 3 Cir., 1956, 234 F.2d 113.

While some courts may not have too clearly delineated the content of this burden, it would appear that, in respect to fraud and misrepresentation at least, the "clear and convincing evidence" criteria is applicable. Assmann v. Fleming, 8 Cir., 1947, 159 F.2d 332, 336. And this Circuit has found no difficulty in setting up the rules, denominating them "well understood."

Such a motion for relief is directed to the sound discretion of the trial court, and particularly to the discretion of the trial judge who "presided in the litigation in which the judgment (now alleged as fraudulent) was entered." Independence Lead Mines v. Kingsbury, 9 Cir., 175 F.2d 983, 988. Discretion is peculiarly and properly left in the trial court in matters of this kind. Not only must there be clear and convincing evidence of fraud, but it must be such as prevented the losing party from fully and fairly presenting his case or defense. Independence Lead Mines v. Kingsbury, supra, at page 988; Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 421, 43 S.Ct. 458, 67 L.Ed. 719. The trial judge saw and heard the plaintiff; saw his twitchings, what they were and what they were not, as did the jury. He saw or heard the other matters relied on by appellant; he felt the "climate" of the trial. The trial judge found no fraud nor misrepresentation. [Tr. p. 180] The Court of Appeals should not and will not substitute its judgment for that of the trial court, nor reverse the lower court's determination save for an abuse of discretion. 3 Barron & Holtzoff, Fed.Prac. & Procedure, p. 253; Cole v. Fairview Develop., 9 Cir., 1955, 226 F.2d 175; Stafford v. Russell, 9 Cir., 220 F.2d 853; Parker v. Checker Taxi Co., supra, 238 F.2d at page 243; Jones v. Jones, 7 Cir., 1954, 217 F.2d 239; Independent Lead v. Kingsbury, supra.

850

■ Our research fails to disclose a single case in this Circuit where this Court has reversed a trial judge on a matter of this kind. We should not commence innovation on the factual basis of this case. We cannot say the District Court did not exercise a sound legal discretion.

Affirmed.