John O. ENGLAND, Trustee of the Estate of Irene Mansfeldt, Bankrupt, Appellant,

v.

Morgan J. DOYLE, Appellee.

No. 16269.

United States Court of Appeals Ninth Circuit.

Aug. 11, 1960.

---

4. See especially Matlock v. Matlock, 1952, 151 Tex. 308, 249 S.W.2d 587, relied on by the Court of Civil Appeals in the Hanna case.

**306**

Shapro & Rothschild, Arthur P. Shapro, August B. Rothschild, San Francisco, Cal., for appellant.

Raymond T. Anixter, Burlingame, Cal., for appellee.

Before CHAMBERS, HAMLIN and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Several months before a judgment creditor filed an involuntary petition in bankruptcy against her, Mrs. Irene Mansfeldt appointed as her agent the appellee, Morgan J. Doyle, a practicing attorney, and delivered to him cash and bonds valued at upwards of $74,000. Mrs. Mansfeldt was ultimately adjudged a bankrupt, but between the filing of the petition and eventual bankruptcy adjudication she had demanded and received from her agent the return of her property. Appellee had acceded to her demands only after first procuring an order from the District Court, through an ex parte application, which authorized and approved the termination of the agency. Shortly afterwards the order of adjudication of bankruptcy was entered by the referee, but the trustee was not appointed until more than a year later. In the meantime, Mrs. Mansfeldt departed from the United States with her property; upon her return, she admitted to having less than $2,000, which was far from sufficient to satisfy the petitioning creditor's claim of $36,566.17.[1]

The trustee, in what is avowedly a preliminary step in an endeavor to impose liability upon the appellee, made a motion in the District Court asking that its order approving the termination of the agency be set aside and vacated. The District Court denied this motion. The trustee has appealed. We have jurisdiction under 11 U.S.C.A. § 47.

The trustee's first argument is that "the application * * * by Appellee Doyle [was] an adversary proceeding of

which the opposing party (petitioning creditor) had to have notice in order for the Court's order to stand."

■ When the granting of the relief sought by a litigant would operate to terminate, impair or modify a substantial right or claim of another, then due notice of the proceeding must be given the person so affected in order to meet the requirements of due process; but if no such right be thus affected due process does not require that he be given notice or an opportunity to be heard in the proceeding. Chaloner v. Sherman, 1917, 242 U.S. 455, 37 S.Ct. 136, 61 L.Ed. 427; Mullane v. Central Hanover Bank and Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

■ It is clear that the trustee is not asserting, and indeed could not assert, that the petitioning creditor had a legal interest in or right to the property at the time of appellee's redelivery to Mrs. Mansfeldt; during the period between the filing of a petition in bankruptcy and the qualification of a trustee following adjudication, the title to the property of a bankrupt remains in the bankrupt as "trustee" for creditors, as does the incidental right of dominion and control of the property itself, in the absence of either the appointment of a marshal by the bankruptcy court to take charge of the property or the issuance of a restraining order preventing its disposition. Johnson v. Collier, 1912, 222 U.S. 538, 32 S. Ct. 104, 56 L.Ed. 306; Danciger and Emerich Oil Co. v. Smith, 1928, 276 U.S. 542, 48 S.Ct. 344, 72 L.Ed. 691; In re Press Printers and Publishers, 3 Cir., 1926, 12 F.2d 660.

In this instance, no receiver or marshal was ever appointed nor was any restraining order issued; the trustee concedes that appellee had no interest in the property of Mrs. Mansfeldt except as her agent under their agreement, that this relationship was terminable at the will

1. The petition was filed by a single creditor in accordance with Section 59, sub. b of the Bankruptcy Act [11 U.S.C.A. § 95, sub. b], which allows a single petitioner to file where his claim exceeds the $500 statutory minimum and the alleged bankrupt has less than twelve creditors.

of either party, and that Mrs. Mansfeldt had made repeated demands upon appellee for the return of her property before it was finally turned over.

■ Property received by one in his capacity as agent is not his, and the general rule is that the agent must deliver such property to his principal upon termination of the agency or the principal's demand. Savage v. Mayer, 1949, 33 Cal. 2d 548, 203 P.2d 9. Thus, if appellee had steadfastly refused to comply with the demand, Irene Mansfeldt could have successfully prosecuted an action for its recovery against her recalcitrant agent. Danciger and Emerich Oil Co. v. Smith, supra.

■■ However, the trustee takes the position that the petitioning creditor was entitled to be given notice because of what he refers to as a "stipulation" or "agreement" purportedly entered into between Mrs. Mansfeldt, the petitioning creditor, and the appellee before Mrs. Mansfeldt was adjudged a bankrupt. The circumstances surrounding this "stipulation" were as follows: during the course of one of the hearings held some eighteen months before the bankruptcy adjudication, Mr. Torregano, now deceased, the attorney for Mrs. Mansfeldt, requested a continuance; present in the courtroom at the time, in addition to Mr. Torregano and the referee, were the attorney for the petitioning creditor and appellee, the latter appearing as witness and as agent for Mrs. Mansfeldt;[2] when the referee commented that a continuance might unduly delay the conclusion of the matter, Mr. Torregano, during an extended argument and explanations in support of his request, made the following statement:

"May I make the observation, Your Honor? So far as this case being delayed, whatever delay there is in the case is not to the detriment of the creditor, because Mr. Doyle has properly observed in the record

here that the assets which would, in the event of an adverse decision by this Court, be administered by this Court are being properly preserved and augmented by income. As to delay, if Your Honor please, we have to be realistic about the matter. If we don't adopt the procedure I have suggested herein, we are faced with inevitable delay. Because in the discharge of our duties, we are going to have to consume this Court's time."

At the conclusion of Mr. Torregano's remarks, counsel for the petitioning creditor (who now represents the trustee) stated his position:

"As to Mr. Torregano's statement to the effect that there would be no prejudice to the estate, I am willing to accept his statement on that basis and I feel we can conserve a great deal of the Court's time as well as our own by doing it that way because we have a gentleman's understanding that as a result of your Honor's ruling on this offer of proof and the objections to it, to the extent that evidence is ordered excluded, if any, no questions and answers will be propounded by the respondent."

Appellee apparently was not called upon during the discussion and made no statement of any kind.

As we understand it, the trustee contends that this colloquy constituted a binding and enforceable stipulation or agreement between Mrs. Mansfeldt, the petitioning creditor and appellee to the effect that appellee would continue to retain the property of Mrs. Mansfeldt to await the outcome of the petition in bankruptcy or, in the alternative, that even if it was not a binding agreement, it was tacitly accepted by the appellee and operated to preclude him from transferring the assets to his principal with-

2. The record nowhere reveals whether appellee was present at this hearing, but the appellant asserts that he was and

this is neither objected to nor denied by the appellee in his brief.

out notice to the creditor after the latter's reliance upon the statement.[3]

There are several difficulties both factual and legal with the trustee's argument. It is extremely doubtful that the remarks by Mr. Torregano were intended by him as a proposal in the nature of an offer to the petitioning creditor on behalf of his client. They were an integral part of an extended statement or argument addressed to the referee for the purpose of securing a continuance. Mr. Torregano's "observation" that the delay resulting from the continuance "would not be to the creditors' detriment because the assets which would, in the event of an adverse decision by this Court, be administered by this Court, are being properly preserved and augmented by income," cannot be extended to imply in addition that neither Mrs. Mansfeldt nor the appellee would terminate the agency and continue to leave the assets in appellee's possession for some indefinite duration.[4] It was simply an acknowledgment that the assets "are being properly preserved and augmented by income." We also experience the same difficulty in treating as an acceptance of an offer the statement of the attorney for the creditor.

Nor are we impressed that the creditor so understood Mr. Torregano's statement or that he was induced by it to refrain from sequestering these assets. His later conduct itself strongly tends to refute this present contention, for shortly after the hearing the creditor unsuccessfully sought an order to restrain the appellee from transferring or disposing of these assets pending an adjudication. In the affidavit filed in support of his motion, he asserted that unless an injunction were granted " * * * said funds or a substantial part thereof may be paid out or otherwise transferred or disposed of by said agent acting under the instructions of said Involuntary Bankrupt, and may be so paid out or transferred to persons or places without the jurisdiction of the above-entitled court."

But aside from the question whether the proof establishes that a stipulation was entered into, there is a more basic reason why the trustee's first contention must fail. There was no evidence submitted showing that Irene Mansfeldt had granted Mr. Torregano any special authority to act on her behalf, and whatever power he possessed in that regard is that which the law will imply from the fact that he was an attorney appearing on behalf of Mrs. Mansfeldt in the bankruptcy matter.

The general rule has been stated as follows:

" * * * the law is too well settled and familiar to admit of discussion that an attorney who is clothed with no other authority than that arising from his employment in that capacity, has no power to compromise and settle or release and discharge his client's claim. He may do all things incidental to the prosecution of the suit and which affect the remedy only and not the cause of action. He cannot bind his client by any act which amounts to a surrender in whole or in part of any

---

3. The trustee argues in his brief as follows:
   "There is no doubt that Mr. Torregano represented the bankrupt at all times involved and had the power in the Court to speak for her. If [by his statement] he in effect stipulated that Appellee Doyle would hold and preserve the assets, pending the Court's decision, not only was the alleged bankrupt bound thereby but so also was Appellee Doyle, her agent. He was present at the hearing when this commitment and stipulation were made on her behalf and made no objection thereto.

* * * * *

"The petitioning Creditor therefore was a definitely interested party * * * and not only would be, but obviously was, prejudiced by the termination of the agency, and, pursuant to the order of July 3, 1953 herein complained of, by the consequent surrender of a substantial part of her assets and by her agent."

4. The trustee was not in fact qualified until two years and ten months after the date of this hearing.

substantial right." Pomeroy v. Prescott, 1910, 106 Me. 401, 76 A. 898, 901; City and County of San Francisco v. Le Roy, 1891, 138 U.S. 656, 11 S.Ct. 364, 34 L.Ed. 1096; 5 Am.Jur. Atty. and Client, § 85.

The usual situation in which the above rule has been applied is where the rights of the client constitute the subject matter of the proceeding or comprise a defense to the cause of action.[5] In the present case, the right of Mrs. Mansfeldt to possess and control her property was not directly involved in the bankruptcy proceeding, either as subject matter or by way of defense. Yet these vital incidents of her property ownership, absent the appointment of a marshal or the issuance of a restraining order, were certainly "substantial" and present an even stronger basis for requiring specific authority of her attorney in order to relinquish them.

A similar situation arose in City of Philadelphia v. Schofield, 1954, 375 Pa. 554, 101 A.2d 625, 627, where an attorney had agreed to require his client, who was otherwise not obligated to do so, to deposit money in court to await the outcome of the client's suit to redeem certain premises, and if the client failed to do so, his action would be dismissed. In holding that the agreement was not binding on the client, the court stated:

" * * * while an attorney has implied authority to make agreements and stipulations with respect to purely procedural matters during the regular course of litigation [citation omitted], he has no such authority to enter into agreements which involve a waiver of any of his client's substantial rights or the imposition upon him of new liabilities or burdens."

The "promise" in this case to hold and preserve the client's assets, being ancillary to the bankruptcy matter and seriously impairing the substantial rights of the client, was outside the permissible limits of Mr. Torregano's inherent or implied authority as attorney and could not therefore bind either Mrs. Mansfeldt or her agent.[6]

The second major point urged by appellant is that appellee practiced a fraud upon the court in failing to disclose the alleged stipulation and the referee's notice of decision handed down more than one month prior to filing the application.[7]

In order to set aside a judgment or order because of fraud upon the court under Rule 60(b), Federal Rules of Civil Procedure, 28 U.S.C.A., it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Hazel-Atlas Glass Co. v. Hartford Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; Root Refining Co. v. Universal Oil Products Co., 3 Cir., 1948, 169 F.2d 514. The motion to set aside on this ground is addressed to the sound discretion of the trial court. Title v. United States, 9 Cir., 1959, 263 F.2d 28; Siberell v. United States, 9 Cir., 1959, 268 F.2d 61. And the burden is on the

5. See, for example, Pfister v. Wade, 1886, 69 Cal. 133, 10 P. 369; Price v. McComish, 1937, 22 Cal.App.2d 92, 70 P.2d 978; De Long v. Owsley's Executrix, 1848, 308 Ky. 128, 213 S.W.2d 806; Wagner v. Peshastin Lumber Co., 1928, 149 Wash. 328, 270 P. 1032; Moore v. De Bernardi, 1923, 47 Nev. 33, 213 P. 1041, 220 P. 544.

6. Appellant makes one further point on this phase of the appeal—that appellee was Mrs. Mansfeldt's attorney, as well as agent, at all times subsequent to the termination of the referee's hearings on the involuntary petition (March 24, 1952).

Although appellant does not explain the significance of this contention and we cannot see how it could affect our conclusion that notice of appellee's application was not required, we have examined the record closely and concluded that appellee was not an attorney for Mrs. Mansfeldt in the bankruptcy proceedings.

7. Appellant limited this argument in the court below, and now on appeal, to "fraud upon the Court." The question of whether a fraud was practiced on the petitioning creditor as well, is therefore not before us.

moving party to establish fraud by clear and convincing evidence. Atchison, Topeka & Santa Fe Ry. Co. v. Barrett, 9 Cir., 1957, 246 F.2d 846.

It is clear that appellee did not take any positive or affirmative action in attempting to obtain the district court's favorable ruling on his application. The "fraud" urged by the trustee consists of appellee's failure to disclose, at the time the application was filed, the existence of either the above "stipulation" or the referee's notice of decision to declare Mrs. Mansfeldt a bankrupt. However, as shown above, the Torregano statement did not amount to a binding stipulation, and therefore appellee, if he remembered the statement at all, was not required to disclose it. Similarly, since there had been no final adjudication in bankruptcy, appellee was not bound to disclose the referee's notice of decision, for this had no effect on the existing rights of the parties, and the rights of the trustee do not vest until final adjudication. City of Long Beach v. Metcalf, 9 Cir., 1939, 103 F.2d 483.

The application did disclose that the agency was terminable at the will of either party, and that appellee as agent was seeking to terminate the relationship and account for the assets under his control. At that moment, the only person with the right to possess those assets was the alleged bankrupt. Thus, no material fact was concealed from the court; the appellee had disclosed all that was necessary to effect a judicial termination of his agency. We cannot say as a matter of law that appellee's nondisclosure displayed an "unconscionable" plan or scheme which influenced the decision of the court. Under these circumstances, the District Court did not abuse its discretion in denying appellant's motion. See Atchison, T. & S. Fe Ry. v. Barrett, supra; Seismograph Service Corp. v. Offshore Raydist, 5 Cir., 1958, 263 F.2d 5; Independence Lead Mines Co. v. Kingsbury, 9 Cir., 1949, 175 F.2d 983.

The order is affirmed.