**ALOHA AIRLINES, INC., Plaintiff-Counterdefendant,**

v.

**HAWAIIAN AIRLINES, INC., Defendant-Counterclaimant.**

**Civ. No. 72–3594.**

United States District Court, D. Hawaii.

Aug. 8, 1975.

Vernon F. L. Char, Damon, Shigekane, Key & Char, Honolulu, Hawaii, Maxwell M. Blecher, Blecher, Collins & Hoecker, Los Angeles, Cal., for plaintiff-counterdefendant.

Daniel H. Case, Ted Gamble Clause, Bruce C. Bigelow, Case, Stack, Kay, Clause & Lynch, Honolulu, Hawaii,

Martin Anderson, Craig McAtee, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant-counterclaimant.

## MEMORANDUM AND ORDER

SAMUEL P. KING, Chief Judge.

Defendant has moved to vacate the judgment herein for plaintiff's misconduct.

The motion is "to vacate and set aside the Jury Verdict, Final Judgment and the Supplemental Final Judgment entered against Hawaiian in this cause . . ., or, in the alternative, to vacate the Jury Verdict and Final Judgment as to the dismissal of Count IV of Hawaiian's Counterclaim (the claim against the Aloha/Budget Fly Drive Program)" and for a new trial in either event.

The motion was argued on July 21, 1975, in San Francisco, California, at which time documentary evidence was received in support of defendant's claims. Upon consideration of the evidence adduced, the memoranda filed, and the arguments made, I find and conclude that the plaintiff has been guilty of such misconduct that the jury verdict and final judgment as to Count IV of defendant's counterclaim should be vacated and a new trial be had thereon, but that the jury verdict, final judgment, and supplemental final judgment as to plaintiff's complaint should stand.

On February 14, 1975, as the final action in the trial to a jury on the complaint and two counterclaims, the jury returned the following three verdicts:

(1) On the complaint:

Did Hawaiian Airlines attempt to monopolize interisland air transportation in Hawaii?

Yes   X   No  ____

If yes, was Aloha Airlines injured thereby?

Yes   X   No  ____

If yes, what is the amount of Aloha Airlines damages?   $1,504,757.00

(2) On Count I of the counterclaim:

Did Aloha Airlines attempt to monopolize interisland air transportation in Hawaii?

Yes  ____   No   X

(3) On Count IV of the counterclaim:

Did Aloha Airlines combine with Budget-Rent-A-Car in unreasonable restraint of trade?

Yes  ____   No   X

Final Judgment pursuant to these verdicts was entered on February 24, 1975, whereby it was ordered, adjudged, and decreed that plaintiff have and recover the sum of $4,514,271, together with costs and attorney's fees, and interest from that date, and further that defendant take nothing on its counterclaims, which were dismissed on the merits.

Supplemental Final Judgment was entered on March 4, 1975, awarding plaintiff $500,000 for attorneys' fees "with costs to be taxed hereinafter, interest on all said amounts to run from this date."

Defendant on March 6, 1975, filed a motion for judgment notwithstanding the verdict, or for new trial, or to remit the award of damages. The court announced from the bench that these motions would be denied, and an Order on Post-Trial Motions signed on July 21, 1975, was filed on July 22, 1975. This order included some intervening matters, specifically a Motion to Review Taxation of Costs filed on April 16, 1975, and a Motion to Interview Jurors filed on May 9, 1975. Besides denying the motion for judgment notwithstanding the verdict, the motion for new trial, and the motion to remit damages, the court awarded costs to plaintiff in the amount of $9,986.92, granted the motion to interview jurors, reaffirmed the Final

Judgment of February 24, 1975, and the Supplemental Final Judgment of March 4, 1975, and vacated the stay on the execution of judgment which the court had granted orally on February 14, 1975.

By this time the jurors had already been interviewed under the supervision of the court with respect to possible improper influences as a result of newspaper publicity during the trial. Defendants have not pursued this matter, possibly because each juror denied any such influence.

On June 30, 1975, defendant filed the motion to vacate which is now before the court. The motion is made pursuant to Rule 60(b), Federal Rules of Civil Procedure, on the basis of "newly discovered evidence that demonstrates that Plaintiff-Counterdefendant Aloha Airlines, Inc., or its officers are guilty of fraudulently manufacturing evidence in a related CAB proceeding which resulted in materially assisting Aloha in procuring a jury verdict adverse to Hawaiian and prevented Hawaiian from fully and fairly presenting its case to the jury and Court."

Rule 60(b) permits the court on motion and upon such terms as are just, to relieve a party from a final judgment for various reasons, including "(3) fraud (whether heretofore denoted intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." While defendant does not cite any other clauses of the rule, additional reasons that might be applicable here are: "(1) . . . surprise . . .; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . .; . . . or (6) any other reason justifying relief from the operation of the judgment."

The facts do support a claim of misconduct on the part of defendant or its officers.

Besides defending itself and alleging by way of counterclaim that plaintiff was trying to do the same things that plaintiff accused defendant of doing, defendant counterattacked vigorously on the basis of an arrangement between plaintiff and Budget-Rent-A-Car entered into on or about September 22, 1971, and which continued into 1973.

The arrangement was advertised as an Aloha/Budget Fly Drive package, and presented to the public as a program whereby a passenger on an Aloha plane could rent a U-drive car for $7.00 for one day's rental, a price approximately one-half that charged other customers of Budget.

Defendant characterized this arrangement as a tying agreement and a per se violation of Section 1 of the Sherman Act. The court ruled against defendant on this claim. Defendant alternatively characterized this arrangement as a contractual restraint condemned by Section 1 of the Sherman Act when measured by the rule of reason. This issue was presented to the jury in the form of the question: "Did Aloha Airlines combine with Budget-Rent-A-Car in unreasonable restraint of trade?" To which the jury answered: "No."

The Aloha/Budget arrangement was also relied upon as one of the means by which Aloha attempted to monopolize air transportation in Hawaii in violation of Section 2 of the Sherman Act. This issue was presented to the jury in the form of the question: "Did Aloha Airlines attempt to monopolize air transportation in Hawaii?" To which the jury answered: "No."

At the time of the trial, it was known that the Aloha/Budget Fly Drive package was not what it was represented to the public to be. In fact, the arrangement was that Aloha would pay to Budget the amount of $7.00 for each rental evidenced by a properly executed rental agreement and verified by Aloha's manifest. Thus Budget was in fact receiving $14.00 for one day's rental. (For one-way flights, Aloha's payment to Budget was $3.50. Also, because of a certain amount of slippage in actual

operations, the payment averaged out at something less than $7.00 even for round trip flights.) This payment by Aloha was characterized in the operative agreement as being for Aloha's "share of the advertising costs," and was reported to the CAB on the required CAB Form 41 Report filed with the Board by Aloha for the period July 1, 1969–June 30, 1972, under Account 62—Other Promotional and Publicity Expenses.

Between September 20 and October 6, 1972, auditors from the CAB conducted an audit of Aloha records. In connection with this audit, the auditors directed a field inquiry to Aloha stating their "opinion that the costs incurred by Aloha under its agreement with Budget are directed at increasing the number of passengers flying Aloha" and therefore should be reported under Account 60—Advertising instead of Account 62. The field inquiry characterized the Aloha/Budget arrangement as follows:

> "The agreement with Budget was entered into on September 22, 1971, and provides that passengers of Aloha in certain categories will be entitled to Budget cars at reduced rental rates. In return, Aloha agreed to pay a prorata share of the advertising costs publicizing the advantages of flying Aloha and being eligible for Budget cars at reduced rentals."

There were two written versions of the Aloha/Budget arrangement. The operative one provided for the payment by Aloha to Budget of a flat $7.00 for each car rental. Another version had a revised first page which substituted for the flat payment "a percentage of Budget's total advertising cost" to be determined in a manner then set forth. This second version was not the actual arrangement between Aloha and Budget and was typed up by or under the direction of Aloha's controller and treasurer for the purpose of concealing the actual arrangement.

All the above was known to defendant prior to trial and was brought out before the jury during the trial. The jury was also informed that Hawaiian had complained to the CAB about this Aloha/Budget package and that the matter had been "settled" in part by Aloha revising its arrangement with Budget.

What defendant did not know or suspect was that the field inquiry by the CAB auditors was based upon an examination of the second non-operative written version of the Aloha/Budget arrangement and an examination of invoice letters from an advertising firm advising Aloha to pay Budget certain amounts of money "for your share of the advertising cost for the Budget-Aloha Fly-Drive package." The CAB auditors themselves were unaware of the operative written version of the Aloha/Budget arrangement, and did not know that there were other billing invoices submitted to Aloha by Budget through the advertising agency and which calculated the amount due Budget at $7.00 per rental car.

Meanwhile, there have been ongoing proceedings before the CAB in the course of which, on May 29, 1975, Aloha's Vice President for Finance and former controller and treasurer testified under oath as follows:

> "Q. Isn't it also true, Mr. Sakamoto, that the reason 103 [the non-operative written version of the Aloha/Budget arrangement] was given to the CAB auditors was to mislead them as to the true nature of the Budget/Aloha agreement?
>
> "A. I would say, yes."

Counsel for defendant became aware of this possible development on May 26, 1975, when shown by an enforcement attorney for the CAB the copy of the Aloha/Budget arrangement given to the CAB auditors during their September-October 1972 audit. This was a copy of the non-operative written version of the

arrangement and bore the notation in the writing of Aloha's controller-treasurer: "Copy to CAB Auditors".

As a result of discovering the deception practiced on the CAB auditors, the Acting Director of the Bureau of Enforcement of the CAB has on June 20, 1975, filed a Petition for Enforcement against Aloha Airlines, Inc., and John H. Sakamoto, without prejudice to other proceedings for civil penalties and enforcement, seeking to enforce the Board's rules and regulations. In the attached complaint, the actual agreement between Aloha and Budget is characterized as an illegal rebate.

Plaintiff argues, among other things, that there was no misconduct on the part of plaintiff or any of its officers because the "true" relationship between Budget and Aloha was fully disclosed in discovery, fully explained in both opening statements, fully developed in the evidence, and fully argued in the closing.

Defendant did obtain copies of both the operative and non-operative written versions of the Aloha/Budget arrangement from Aloha's files. These gave no indication that the operative version had been concealed from the CAB. During the examination of Aloha's Vice President for Finance and former Controller and Treasurer at the trial, plaintiff produced and put in evidence the CAB auditors' field inquiry which had not been produced by Aloha during discovery. This field inquiry was used as a basis for arguing to the jury that the CAB auditors had reviewed the Aloha/Budget arrangement and found nothing wrong with it except that Aloha's costs in connection therewith should be moved from Account 62 to Account 60.

In laying the foundation for the introduction of this CAB auditors' field inquiry, Aloha's witness misrepresented the basis for the inquiry. Defendant's counsel had the following exchange with Mr. Sakamoto:

"Q. Now, that $750,000 was not all for advertising, was it?

"A. Specifically, I don't know. However, we were told by the CAB auditors to include it in advertising. It is a question of what expense account. In previous years, as I told you, we had included that amount under another expense account called promotion, but, when the CAB auditors came in and asked us about the Budget package, they told us to reclassify them in advertising. It's a question of an auditor's discretion as to what expense goes where.

"Q. But you knew, did you not, Mr. Sakamoto, at that time that the substantial portion of that $750,000 for 1973 was rebate to Budget-Rent-A-Car. It was not spent for advertising in magazines and on radio, television, whatever. You knew that, didn't you?

"A. No; I didn't know that. As far as I know, it was spent on a broad category of advertising and promotional expenses, not strictly related to media advertising such as newspaper, but, in the marketing field, as I understand it, they can classify marketing efforts towards efforts other than advertising as a promotion expense. So, whether the CAB calls it advertising or we call it promotion, it was simply a matter of where you put that in the expense area.

"Q. Regardless of what the name was that anyone wanted to call it, I'm asking for your knowledge that you knew that that was not for advertising.

"A. As far as my knowledge is concerned, part of it was for direct advertising, as you will call it, in media, and others were for related promotional expenditures.

"Q. Rebates

"A. No. I wouldn't call it rebates."

This testimony by plaintiff's financial officer was deliberately misleading. The CAB auditors did not review the operative Aloha/Budget arrangement because this same witness had concealed it from them. What they did review was the "doctored" written version that had been prepared by or at the direction of this same officer. When the CAB enforcement division finally examined the operative agreement, they charged Aloha with making an illegal rebate.

When questioned by Aloha's counsel, Mr. Sakamoto further obfuscated the situation.

"Q. Will you identify what [Exhibit] 464 is?

"A. 464 is what the CAB calls a report of audit findings. It is given when a field auditor from the CAB comes over to an airline and finds something which they don't think is in accordance with what the regulations call for; and this happens to cover the advertising. The subject is misclassification of advertising costs.

"Q. And what is [Exhibit] 465, sir?

"A. 465 is an acknowledgement on Aloha's part that we would accept the interpretation of the auditor and take the action to correct that misclassification.

" . . . .

"Q. And the thrust of what the CAB auditor said is, for this year and forever, take it out of 60 and put it in account 62, advertising.

"A. That's correct.

"Q. At no time was there a failure to report the actual expense to the CAB.

"A. That's correct.

"Q. It was just a matter of what account to put it in.

"A. That's correct."

In fact, that was not correct, there was a failure to report the true nature of the expense to the CAB, and the CAB auditors never said that the operative Aloha/Budget agreement was being reported only as a misclassification of the expense, and Mr. Sakamoto of all persons knew that his answers were less than the whole truth.

Plaintiff's attorney in closing argument, said in part:

" . . . So, the pure and simple fact is that the Budget deal hurt no one, was not anti-competitive, it was not unreasonable, and that's what you have to find. Was it an unreasonable restraint of trade or was it legitimate promotional activity beneficial to the public without restricting Hawaiian's ability to be equally competitive."

What's wrong with that argument is that the CAB would probably have charged that the Aloha/Budget arrangement calls for an illegal rebate, had they known of the operative agreement, rather than passing the matter off as a misclassification of expense, and although defendant's attorney argued improper rebate to the jury, the CAB auditors' field inquiry back in 1972 effectively neutralized that argument.

Under these circumstances, I am of the opinion, and I find and conclude, that defendant did not get a fair trial to the jury on Count IV of its Counterclaim.

Plaintiff argues that the facts now relied upon by defendant are not facts which could not have been discovered by due diligence in time to move for a new trial. It is a fact that defendant did not appreciate the significance of the language in the CAB auditors' field inquiry stating that "Aloha agreed to pay a prorata share of the advertising costs" until, at the earliest, May 26, 1975. The field inquiry, and Aloha's acceptance of the proposed reclassification of expenses, were not produced un-

til Mr. Sakamoto was on the stand during the trial. His answers with respect to those exhibits were deliberately false and misleading. Defendant's counsel had asked questions which, if truthfully answered, would have brought out the irrelevancy of Exhibits 464 and 465. I find that defendant was not lacking in due diligence by not earlier discovering the deception practiced on the CAB.

Plaintiff contends that the jury was not deceived because the court informed the jury that the CAB had challenged the legality of the Aloha/Budget arrangement and that the matter had been "settled". If anything, this statement compounded the prejudice to defendant. The basis for the challenge was not developed and could well have been thought to have been only a misclassification of expenses. The settlement was not explained and could well have been thought to have been the agreement by Aloha to reclassify the expenses. If I had known that Exhibits 464 and 465 referred to the "doctored" agreement and not the real agreement between Aloha and Budget, I do not believe that I would have cut off further evidence regarding the probable illegality of the Aloha/Budget arrangement with the abbreviated statement that I did give. In addition, defendant might well have been entitled to a further instruction as to how the illegality of a contract is to be weighed in determining whether it is in restraint of trade under Section 1 of the Sherman Act.

Both parties rely on *Atchison, Topeka & Santa Fe Railway Co. v. Barrett*, 246 F.2d 846 (9th Cir. 1957). Plaintiff cites also *England v. Doyle*, 281 F.2d 304 (9th Cir. 1960). In both cases, relief was denied. In *Atchison*, a jury trial under the FELA, the district court found that there had been no fraud or misrepresentation. In *England*, a proceeding in bankruptcy, the district court found that no material fact had been withheld from the court. I find the situation more nearly similar to that in *Associates Discount Corporation v. Goldman*, 52 F.R.D. 37 (W.D.Pa.1971), where the plaintiff employee's witnessing of an alleged forged signature of defendant was held to be sufficient basis for vacating a judgment pursuant to Rule 60(b). *See also Peacock Records, Inc. v. Checker Records, Inc.*, 365 F.2d 145 (7th Cir. 1966).

On the other hand, I do not find any significant connection between Mr. Sakamoto's duplicity concerning the Aloha/Budget arrangement and the verdict rendered in favor of plaintiff on its complaint. In argument, defendant's counsel suggested that the resulting attack on Mr. Sakamoto's credibility would assist defendant materially in rebutting plaintiff's case in chief. I do not think so. The Aloha/Budget arrangement did not even commence until after the period during which Aloha alleged that Hawaiian was in violation of Section 2 of the Sherman Act. Mr. Sakamoto's testimony insofar as it related to the complaint was largely limited to statistics and charts. I find and conclude that there is no basis under Rule 60(b) upon which to set aside or vacate the verdict and judgment on the complaint.

Accordingly, I conclude that the Jury Verdict and Final Judgment as to the dismissal of Count IV of Hawaiian's Counterclaim should be vacated and a new trial held thereon, and that the Jury Verdicts, Final Judgment and Supplemental Final Judgment as to Aloha's complaint and as to the dismissal of Count I of Hawaiian's Counterclaim should stand, and

It is so ordered.