**Bradford D. HOWARD, Plaintiff,**

v.

**BURLINGTON NORTHERN, INC., a Delaware Corporation, Defendant.**

Civ. No. 75–731.

United States District Court,
D. Oregon.

Jan. 11, 1977.

John C. Boylan, Rerat, Crill & Boursier, Minneapolis, Minn., Dwayne R. Murray, Bailey, Doblie & Bruun, Portland, Or., for plaintiff.

Delbert W. Johnson, Roger J. Crosby, Portland, Or., for defendant.

BELLONI, District Judge:

Plaintiff Bradford Howard (Howard) is a brakeman for Burlington Northern Railroad (BN), and was involved in a November 1973 derailment which occurred near the tiny town of Crescent, Oregon.[1] Howard claimed that he injured his "back, neck, spine, left arm, and other parts of his body" in the derailment, and sued BN under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 et seq., for damages. A jury returned a verdict for BN. Howard moves for post-judgment relief. Fed.R.Civ.P. 60(b).

## I

## UNTIMELINESS

A. *The Initial Motions.* Essential to an understanding of the initial motions is that although Howard is represented by co-counsel—Minnesota counsel and local counsel—Minnesota counsel has carried most all of plaintiff's load.[2]

The jury verdict was returned in the late afternoon of June 2, 1976. Pursuant to Rule 58, Fed.R.Civ.P.,[3] the clerk, without any direction from the court, prepared, signed and entered a judgment on June 3, 1976. Minnesota counsel claims that he did not learn of the entry of judgment until June 14, even though a copy of the judgment was mailed to local counsel on or about June 3.

On June 9, Howard's local counsel mailed me a request for permission to question the jurors regarding any irregularities in their

---

1. Crescent is located between Eugene and Bend, near Crescent Lake.

2. Local Rule 4(c) provides that local counsel shall be a "meaningful" participant in the case.

3. Rule 58 provides that upon a general jury verdict, the clerk shall "forthwith prepare, sign, and enter the judgment without awaiting any direction by the court . . . ."

deliberations. On June 11, defense counsel mailed me an objection to this request. I denied the request in a June 14 letter, but this denial evidently was not received by Minnesota counsel until June 21.

June 14 was the last day on which to file any post-judgment motions under Rule 59 (10 days after entry of judgment).

On June 16, Howard filed alternative motions for a new trial, to amend the verdict, and for judgment n. o. v. under Rule 59. The bases for these motions were: 1) jury's finding of lack of negligence was not supported by the evidence; 2) error in refusing to give plaintiff's requested "workmen's compensation" jury instruction; 3) error in refusing to give plaintiff's requested "no guaranty" jury instruction; 4) error in curtailing the voir dire; 5) error in curtailing closing argument; and 6) the jury's verdict was the result of passion and prejudice (in favor of a railroad?). I denied the motions without a hearing because of their obvious untimeliness. Fed.R.Civ.P. 59(b) and (e); 6(b).

Plaintiff now moves for relief from judgment on the untimeliness issue. Fed.R. Civ.P. 60(b). He contends that he should be excused from the 10 day time limit under Rule 59(b) because: a) Minnesota counsel did not receive timely notice of the entry of judgment; and b) counsel was justified in assuming that the 10 day period was tolled while the court considered the request to poll the jury.[4]

B. *Relief From Untimeliness.* Rule 59(b) is quite explicit. It provides: "A motion for a new trial shall be served not later than 10 days after the entry of judgment." Rule 59(e) sets the same time limit on the filing of motions to alter or amend judgments. Rule 6(b) on enlargement of time provides: "[T]he court . . . *may not*

extend the time for taking any action under rules . . . 59(b) . . . and (e) . . . except to the extent and under the conditions stated in them." (emphasis added). Plaintiff's motion was served later than the allowable 10 days.

As I read the Federal Rules, I had no choice on whether or not to deny plaintiff's initial motions. I don't see how I have any choice now that plaintiff is moving under Rule 60(b) instead of Rule 59. Even assuming that I have a choice in the matter, no *excusable* neglect or mistake has been demonstrated. The contention that plaintiff should be relieved from judgment just because *Minnesota* counsel did not learn of the entry of judgment until June 14 is, at best, frivolous. If local counsel had truly been a "meaningful" participant, he could have filed the necessary motions. Furthermore, counsels' ignorance of the law involved (Rule 58 and the "assumed" tolling of the 10 day period while I pondered a jury poll request) is not "excusable neglect" or "mistake" within the meaning of Rule 60(b). 11 Wright and Miller, *Federal Practice and Procedure* 170 (1973).

## II

### FRAUD AND NEWLY DISCOVERED EVIDENCE

BN's theory of the derailment was that it had been caused by a defective and fractured truck bolster on a Santa Fe Railroad hopper car. BN's accident investigative report stated that this was the cause of the accident, and BN officials testified at trial that they thought the hopper caused the derailment.

Plaintiff now claims that a broken rail caused the derailment,[5] that BN concealed

---

**4.** This motion is loosely cast as being based on "mistake, inadvertence . . . or excusable neglect." Fed.R.Civ.P. 60(b)(1).

**5.** A fuller understanding can be had if Appendix A is studied. Plaintiff's theory is that a rail which was cut and taken away from the scene by BN looked like the rail in Sketch A. This would indicate an "old" break which could have caused the derailment, and arguably

should have been discovered by normal precautionary rail maintenance.

BN's theory was and is that the truck bolster caused the derailment and that the cut-away portion of rail merely was sheared off by a derailed car during the derailment—producing a rail such as that in Sketch B.

Thus, plaintiff's theory is that the cut-away portion of rail may have *caused* the derailment.

this fact from him both by not fully answering his Interrogatory No. 12 and by discarding the suspect piece of rail, and that he could not have discovered this evidence either before trial or within 10 days after entry of judgment. He moves for relief from judgment, Fed.R.Civ.P. 60(b).[6] An evidentiary hearing was held on this latter motion.

A. *Fraud and Concealment.* Plaintiff argues that defendant's responses to his Interrogatory No. 12 purposely concealed reference to the cut-away rail, and that this was fraudulent concealment of evidence on BN's part. The (form) interrogatory and its response are as follows:

12. (a) Was an inspection made of the location of said accident and of any equipment owned or used at the time of the accident?

Answer: Yes

(b) If answer is "Yes", what are names, addresses and employment of the persons making such inspections?

Answer: Conductor Starr looked at the caboose and the routine Operating Dept. investigation was conducted.

(c) Were written reports made of the results of such inspection?

Answer: No—see results of routine investigation in letter I. C. Ethington to N.M. Lorentzsen of 1/16/74.

(d) If answer to (c) is "Yes"

(1) Who made such reports?

(2) Who has possession of them?

(3) May plaintiff's attorneys see or have copies of such reports?

(4) If so, when?

Answer:

(1) I. C. Ethington

(2) D. W. Johnson

(3) (Copy of report attached).

(4) (Copy of report attached).

(e) What were the findings of such inspections?

Answer: See attached letter from I. C. Ethington—dated 1/16/74. (Ethington's letter put the blame on the fractured Santa Fe truck bolster).

Howard has failed to meet his burden of proving fraud by "clear and convincing evidence." *England v. Doyle*, 281 F.2d 304 (9th Cir. 1960). I find that there was no concealment of evidence or fraud on BN's part. First, the rail was kept in plain view on a coat rack in the office of Klamath Falls area Assistant Superintendent for BN, Mr. Shobert, for some two or three months. BN's officials testified that they thought that the broken truck bolster had caused the derailment, and I believe they did believe this. Secondly, if plaintiff had desired to elicit information about other possible causes of the derailment, he could have, for instance, deviated from the use of form interrogatories and conducted discovery in a fashion geared toward this case, rather than toward any FELA case.

The fact that the answer to Interrogatory No. 12 did not mention the cut-away rail is not surprising—the interrogatory in no way elicits that information. The fact that *every* member of the clean-up crew and investigation crew was not listed in response to Interrogatory No. 12 did not prejudice Howard. His counsel was well aware of the fact that many trainmen are involved in a cleanup. A follow-up interrogatory could have specifically requested the names of all who had participated in the cleanup, as opposed to those who made the investigation.[7]

B. *Perjury of a Material Witness.* The anticipated second prong of plaintiff's fraud and misconduct attack—perjury of a mate-

---

Defendant's theory is that the cut-away portion of rail was *produced by* the derailment.

**6.** This motion is based on "newly discovered evidence" and the "fraudulent concealment of evidence." Fed.R.Civ.P. 60(b)(2), (3).

**7.** This would have put plaintiff in contact with Michael Starr who testified at the hearing and witnessed the cutting away of the rail.

rial witness, Conny Herrera—did not materialize at the hearing.[8]

C. *Newly Discovered Evidence.* Plaintiff's post-trial interviews with other BN employees (most of them, like Howard, active union officers) produced evidence of the broken rail. Four of these employees testified for plaintiff at the hearing. Each stated that the rail appeared as if it was an "old" break, as opposed to a new or fresh break. One of them, Starr, the son of the conductor of the derailed train, testified that he witnessed the rail being cut and taken away from the scene of the derailment. All of them, however, admitted that the rail was kept in plain view in Shobert's office for quite some time after the accident.

BN's witnesses at the hearing described the piece of rail as merely being "battered" (worn down) (see attachment) at the ends with sheared angle bars (the angle bars connect the ends of the rails to each other).

The problem with plaintiff's position here is that he does not provide adequate justification for the late discovery of this evidence. If, more than 10 days after entry of judgment, an investigator or attorney snooping around Klamath Falls, Oregon, can discover information regarding the cut-away rail, why couldn't this information have been discovered before trial? There is no sufficient answer to that question.

· Plaintiff can't fault BN—his interrogatories did not elicit information about the rail. Mr. Balch, the BN supervisor in the Klamath Falls area at the time of the derailment, did mention the cut-away rail in his testimony at trial. BN need not have discovered or made plaintiff's case for him.

I find that with due diligence the evidence regarding the cut-away rail could have and should have been discovered by plaintiff long prior to trial.

### III

### RULE 60 NOT A VEHICLE FOR RELITIGATION

█ Howard appears to assume that the presence of the Santa Fe truck bolster evidence and the absence of the broken rail evidence forced the jury to blame the derailment on Santa Fe and thereby find no negligence on BN's part.

I heard the evidence in the case and do not agree with plaintiff's assumption. The jury was instructed on *res ipsa loquitur* and that BN had a continuing duty to use ordinary care to furnish its employees with a safe place to work. The jury could easily have blamed BN for the derailment, and yet still returned a defense verdict—if they believed that Howard was not damaged, a permissible finding in this case: The caboose in which Howard was riding did not turn over during the derailment, he did not even fall out of his seat though he was not wearing a seat belt, and his medical evidence, at best, was quite weak.

To allow Howard's motion would, in reality, permit him "to use a Rule 60 motion to relitigate the merits of his claim . . .", a purpose for which the rule was not designed. *Mastini v. American Telephone and Telegraph Co.,* 369 F.2d 378, 379 (2d Cir. 1966), *cert. denied,* 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967).

IT IS ORDERED that plaintiff's motions for relief from judgment are denied.

---

8. Herrera, plaintiff's foreman, supposedly admitted to plaintiff after the trial that he (Herrera) had perjured himself. (Herrera testified at trial that the rails near the scene of the accident had not caused the derailment). Herrera's testimony, however, remained the same at the hearing.

"Fraud," "concealed evidence," and "perjury" may be terms which are taken lightly in other courts. That is not true here. I do not appreciate or condone the *careless* manner in which these terms have been thrown about by Minnesota counsel; or the resulting aspersions which have been cast on a distinguished member of the bar of this court.

## APPENDIX A

SKETCH A

Anywhere from 16" to 3'

The darkened area represents abnormal battering. Depth of wear--approximately 2".

Angle "iron" or "bar" (holds rails together).

Joint of two rails

SKETCH B

Anywhere from 1 1/2' to 3'

Normal battering. Depth of wear--approximately 1/16" to 1/4". Length of wear--approximately 2" to 3".

"Sheared" or broken angle bar allegedly caused by derailment.

Joint of two rails.

Angle "iron" or "bar".