**K–MART ENTERPRISES, INC., a corporation, Plaintiff,**

**v.**

**The HUNTER COMPANY et al., Defendants.**

**No. C–77–2106–WAI(SJ).**

United States District Court, N. D. California.

Nov. 17, 1978.

Ronald M. Whyte, Hoge, Fenton, Jones & Appel, Inc., San Jose, Cal., for plaintiff.

Richard A. Hunter, San Jose, Cal., Lawrence J. Leigh, Fabian & Clendenin, Salt Lake City, Utah, for defendants.

MEMORANDUM OF DECISION

INGRAM, District Judge.

This is an action in interpleader arising under the provisions of 28 U.S.C. §§ 1335, 1397 and 2361. K-Mart Enterprises, Inc. (hereinafter called K-Mart) is indebted to American Brake and Components, Inc.

(hereinafter called American Brake) in the sum of $39,336.24.[1]

The contending creditors of American Brake who seek in this action to establish their relative priorities in entitlement to the fund represented by the K-Mart indebtedness are the Hunter Company (hereinafter called Hunter); Michael Vernon dba MN&B Truck Leasing (hereinafter called Vernon); D&D Brake Sales, Inc. (hereinafter called D&D Brake); the United States of America; and Citizen's National Bank (hereinafter called Citizen's).

American Brake during its business life was a manufacturer and reconditioner of brake shoes and components thereof. Its primary customer to the extent of 99 percent of its output was K-Mart. In 1976, American Brake essentially ceased doing business. The chronology of events involved in this case are as follows:

1. Prior to January 1, 1975, Hunter lent American Brake the sum of $26,000, and received as evidence of indebtedness a promissory note secured by a security agreement covering furniture, inventory, equipment, stock-in-trade, and accounts receivable.

2. On July 2, 1976, American Brake was incorporated under the laws of the state of Nevada, and the above note and security agreement were assumed by the corporation.

3. On December 20, 1975, American Brake entered into a factor agreement with Hunter.

4. On or before January 1, 1976, Hunter loaned American Brake the sum of $50,000, and received as evidence of indebtedness a promissory note secured by a security agreement.

5. In the spring of 1976, Hunter purchased from American Brake, under the terms of the aforesaid factor agreement, accounts receivable owed to K-Mart and received payments thereon.

6. On March 3, 1976, Citizen's loaned American Brake the sum of $15,000, and received as evidence of indebtedness a promissory note secured by a security agreement covering all inventory and accounts receivable of American Brake.

7. On March 30, 1976, a financing statement executed by American Brake and Citizen's was filed and recorded in Utah which was then the residence of American Brake.

8. On July 19, 1976, D&D Brake filed a verified complaint and garnishment against American Brake in an Indiana court, and the writ of garnishment was duly served upon K-Mart's statutory agent for service of process resident in Indiana.

9. On July 21, 1976, William H. Miller, president of American Brake, resigned. He remained active in a full time capacity until July 31, 1976, and remained active in a part-time capacity as custodian of records of American Brake until August of 1977.

10. On July 31, 1976, American Brake moved its residence from Utah to California.

11. On August 26, 1976, Hunter demanded payment on its note of $26,000, and American Brake failed to pay whereupon Hunter took possession of the accounts receivable and equipment of American Brake.

12. On September 15, 1976, Vernon filed suit against American Brake in the state court of Utah and summons and complaint were served upon Miller. Subsequently, on November 17, 1976, a default judgment was taken against American by Vernon, and on November 24, 1976, writs of garnishment were issued thereon and were served upon K-Mart.

13. On December 21, 1976, D&D Brake took a default judgment against American Brake in the Indiana court.

14. On March 2, 1977, Hunter filed two financing statements with the Secretary of State of Utah relative to the security agreements of January 1, 1975 and January 1, 1976, and on March 21, 1977, Hunter filed a

1. The sum was agreed upon by stipulation between K-Mart, Hunter and American Brake. No other party has contested its accuracy. The claims which underlie it are subject to verification on or before January 31, 1979.

financing statement with the Secretary of State of Utah relative to the factor agreement of December 20, 1975.

15. On March 22, 1977, Citizen's filed an action against American Brake in the state court of Utah.

16. On April 4, 1977, the Internal Revenue Service filed a notice of federal tax lien in Utah.

17. On October 31, 1977, Citizen's assigned its lawsuit, lien, note and security agreement to Hunter.

18. On December 9, 1977, D&D Brake assigned its lawsuit, judgment and garnishment to Hunter.

This action was tried and the testimony, exhibits and memoranda of the parties have been duly considered, and the court now fixes the priorities of claims to the fund in issue as follows:

1. Hunter as assignee of Citizen's.
2. Hunter as assignee of D&D Brake.
3. Vernon.
4. Hunter under its financing statements filed March 2, 1977 in Utah.
5. The United States of America.

The pivotal issue in this case is which creditor should occupy the second position in the order of priority. All parties concede apparently that the Citizen's claim is first in line and that Hunter as assignee thereof is entitled to the position of Citizen's. As stated, controversy revolves around the second position. Vernon contends that it is entitled to second position because its writ of garnishment is senior to the Hunter financing statements filed in Utah, and because the D&D Brake garnishment assigned to Hunter is invalid. Hunter contends that the judgment of Vernon against it is void for want of jurisdiction inasmuch as Miller was not authorized to receive service in behalf of the corporation; that Vernon has no standing to attack the validity of Indiana garnishments assigned to Hunter by D&D Brake; and that in any event under the applicable provisions of the Uniform Commercial Code, Hunter and American Brake entered into an accord and satisfaction which entitles Hunter to first priority.

Everyone agrees that the United States failed to perfect its tax lien properly and that it is last in line.

Because of the limited sum which is available for division in this lawsuit among the contending parties, it will not be necessary to discuss in depth each of the contentions raised between the respective parties. Suffice to say that Hunter is in first position as the assignee of Citizen's, and that Hunter is entitled to second position as the assignee of D&D Brake, and is the successor of the claim of the latter in the approximate sum of $42,000.

Vernon contends that it is entitled to have the perfected writ of garnishment issued in favor of D&D Brake and served upon K-Mart declared invalid and set aside because of the alleged constitutional infirmity of the Indiana statute under which the writ of garnishment was obtained.

Vernon relies upon *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and *North Georgia Finishing, Inc. v. Di Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) to support his contention that the Indiana statute in question is facially unconstitutional, and the writ of garnishment issued pursuant to it invalid. Because Vernon has no standing to raise the issue, discussion of the alleged constitutional infirmity of the statute is unnecessary.

Vernon justifies his purported standing largely on the basis that he falls within a "zone of interest" contemplated by the reach of procedural due process and that he has been economically disadvantaged by the fact that the allegedly invalid Indiana process is senior to his matured claim to share in the K-Mart fund. He relies upon the holding of *Association of Data Processing Services Organization v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) in support of his standing contentions. That case considered the effect of the promulgation of an administrative agency upon persons arguably within the scope of its regulatory ambit, and accorded such persons the right to challenge the administrative ruling in question, provided that they had also been disadvantaged by its effect, either economical-

ly or otherwise. The court, in establishing these criteria of standing, observed that the Administrative Procedure Act expressly grants standing to those aggrieved by agency action [5 U.S.C. § 702], and that the demonstrated tendency of the law as reflected in statutes is towards enlargement of the class of persons who may protest administrative action. The court then concluded that under the particular statutes[2] there involved, judicial review had not been precluded by Congress and was therefore appropriate.

■ The situation to which Vernon seeks to apply the criteria expressed in *Data Processing* is quite different. To establish standing in the instant case, Vernon must establish that the procedural operative force of the Indiana statute arguably deprived him of some significant property interest without due process of law, *Fuentes, supra; North Georgia, supra; McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *United States v. Rains,* 326 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Smart v. Texas Power and Light Company,* 525 F.2d 1211 (5th Cir. 1976); *Litton Business Systems, Inc. v. Paul L. L'Esperance, Inc.,* 387 F.Supp. 1265 (ED Pa.1975).

■ The issuance of the Indiana writ of garnishment without prior notice and hearing did not deprive Vernon of any property interest whatever. While third parties may effectively set aside procedures similarly to those attacked here, in order to do so they must themselves have some significant property interest in whatever has been seized or distrained. *Litton Business Systems, supra.* On July 19, 1976, when the D&D Brake writ of garnishment was served upon K-Mart, Vernon had no judgment against American Brake, no outstanding process seeking distraint of American Brake's assets, and as far as the evidence shows, no viable claim of any sort against American Brake or any of its assets except perhaps an expectant one as a general creditor. Mrs. Vernon testified that the first contract between Vernon and American Brake was executed sometime in April of 1976. The copy of the unverified complaint filed by Vernon in the Utah court which is appended to Exhibit MV–3 alleges that two contracts were executed; one in April and one in July of 1976. There is no evidence as to what the exact financial status was as between Vernon and American Brake on July 19, 1976, but it is safe to assume that a general ongoing business relationship existed, and at most a general debtor-creditor relationship. Under these circumstances, Vernon cannot be said to have such a significant interest in moneys owed to American Brake by its debtor as to entitle him to notice and hearing of the garnishment of the same by another. Indeed, nothing in the evidence indicates that Vernon even possessed a matured cause of action against American Brake on July 19, 1976. Put another way, even if Vernon had notice and an opportunity to be heard at the time of the Indiana garnishment, there is no showing that he then had anything to assert, and the failure of notice and hearing cannot therefore deprive him of procedural due process of law.

The Court of Appeal for the Ninth Circuit has held that where the granting of relief sought by a litigant would operate to terminate, impair or modify a substantial right or claim of another, then due notice of the proceeding must be given to the person so affected in order to meet the requirements of due process; but if no such right be thus affected due process does not require that he be given notice or an opportunity to be heard in the proceeding. *England v. Doyle,* 281 F.2d 304 (9th Cir. 1960). In that case an agent for one against whom an involuntary petition had been filed held assets belonging to the bankrupt and which the bankrupt was entitled to possess, there being no trustee appointed and no prohibitory order in force. Upon the bankrupt's demand for the return of the property the agent obtained *ex parte* the order of the district court terminating the agency and returned the property to his bankrupt-prin-

**2.** National Bank Act, 12 U.S.C. § 24; Bank Service Corporation Act, 12 U.S.C. § 1864.

cipal. Subsequently a creditor of the bankrupt caused the trustee of the estate to seek the dissolution of the district court's order on the basis that the creditor had received no notice, and that the proceeding was adversary. The court said at page 306:

"It is clear that the trustee is not asserting, and indeed could not assert that the petitioning creditor had a legal interest in or right to the property at the time of appellee's redelivery to Mrs. Mansfeldt."

In like manner, Vernon, having at the time of the issuance of the Indiana writ no legal interest in, or right to the property garnished, was not then entitled to notice and hearing under the applicable strictures of procedural due process, and cannot now attack the validity of the writ under the rubric that he was entitled to notice and hearing.

The court is satisfied that Miller was an agent of American Brake at the time that he was served within the meaning of Utah Rules of Civil Procedure, Rule 4(e)(4). He had the direction, custody and control of all the remaining property of American Brake then in Utah, regularly received service of process in lawsuits against American Brake, and upon the request of John Hunter regularly supplied information contained in the records which were in his custody. Therefore, the service upon Miller was adequate to establish jurisdiction in the Utah court.

In view of the disposition above made, other issues raised by the parties to this case need not be discussed or determined. Counsel for Hunter will prepare, serve and file proposed findings of fact and conclusions of law in accordance with this decision.