**UNITED STATES of America, Plaintiff,**

**v.**

**STANDARD OIL COMPANY OF CALIFORNIA, Defendant.**

No. C–52334 SC.

United States District Court,
N. D. California.

Jan. 25, 1977.

Anthony E. Desmond, U. S. Dept. of Justice, San Francisco, Cal., Bernard M. Hollander, Stanley M. Gorinson, Robert J. Rose, Dept. of Justice, Washington, D. C., Robert B. Ross, Dept. of Justice, Antitrust Division, Washington, D. C., for plaintiff.

Thomas J. Klitgaard, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant.

Angelo J. Palmieri, Kevin P. Kane, Kindel & Anderson, Los Angeles, Cal., for McCook, amicus curiae.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONTI, District Judge.

## I. PREFACE.

This action was brought by the United States under Section 4 of the Sherman Act (15 U.S.C. § 4) alleging that Standard Oil Company of California (SoCal) had violated Section 3 of the Sherman Act (15 U.S.C. § 3) by engaging, since 1956, in a continuing combination and conspiracy to unreasonably restrain and monopolize the distribution and sale of petroleum products in American Samoa. Specifically, the complaint alleged that SoCal had entered into long term petroleum requirements contracts with the primary nongovernmental consumers of petroleum in American Samoa, thereby causing an unreasonable restraint of trade.

On December 14, 1972, this court entered its judgment against SoCal adjudging it to have violated Section 3 of the Sherman Act. Prior to the entry of the judgment, on October 26, 1972, the court filed its Findings of Fact and Conclusions of Law, finding in part that SoCal, in combination with certain tuna canners doing business in American Samoa, conspired to reduce the price of petroleum products thereby preventing certain specified competitors from entering the petroleum market.

In May, 1974, a treble damage plaintiff (McCook) brought suit against SoCal in the Central District of California under Section 4 of the Clayton Act (15 U.S.C. § 15) alleging that he was a potential entrant into the petroleum market in American Samoa who had been excluded by the illegal conduct of SoCal. The complaint against SoCal was based, in part, upon the findings entered by this court in the government case, including a specific finding that McCook had been wrongfully excluded by SoCal from the petroleum market in Samoa (Finding # 67).

During the course of pre-trial discovery in the treble damage action, in response to requests for production of documents and subpoenas duces tecum issued by SoCal, approximately seventy-eight documents which were not previously disclosed to SoCal were discovered in the files of plaintiff (McCook), his agent in American Samoa (Turnbull), his attorney in the government case (Lynn), and in the files of a San Diego law firm retained by McCook's attorney during the government case to evaluate a possible treble damage action. SoCal contends that these documents were relevant to its defense in the government case and show (1) that McCook was not excluded from the market in American Samoa due to SoCal's price reductions, and (2) that the canners did not conspire with SoCal to go along with the price reductions in order to exclude McCook from the market.

Also, during pre-trial discovery in the treble damage action, SoCal noticed the deposition of Mr. Bernard M. Hollander, the Justice Department trial attorney in the government's case. Mr. Hollander was also served with a subpoena duces tecum. The government moved for a protective order.

Attached to the government's motion was an affidavit by Mr. Hollander attesting that he had received no documents from McCook's agent not already produced. At this time the government also produced a letter to Mr. Hollander from McCook's agent with fourteen attachments. This letter was written after this court entered judgment in the government case. SoCal contends that these attachments contain information relevant to SoCal's defense in the government case. The district court granted the protective order vacating Mr. Hollander's deposition.

Additionally, SoCal sought from the government certain internal memoranda, correspondence, and notes made in preparation of the government case. SoCal also sought similar documents from McCook, Turnbull, Lynn and other attorneys consulted by Turnbull and Lynn to evaluate the probability of success in the treble damage action. These documents, both from the government and McCook, were twenty-nine in number. The district court protected from discovery the documents sought from the government, ruling that the documents were either privileged or not relevant. The documents sought from the treble damage plaintiff were simply withheld under a claim of privilege. The court did not rule on these claims of privilege, and SoCal has not attempted further production of these documents in the treble damage action.

On December 6, 1976, after receiving leave from the Supreme Court, SoCal filed a motion to set aside this court's judgment in the government case pursuant to Rule 60(b) F.R.C.P., for fraud upon the court. SoCal asserts two alternative theories for its claim of fraud: (1) that McCook, his agent Turnbull, and attorney Lynn conspired prior to trial in the government case to suppress from discovery certain documents relevant to SoCal's defense and that the government, although not aware of this suppression until after this court entered its judgment, failed at that time to inform either SoCal or the court of these documents, thereby precluding SoCal from bringing a motion to set aside the judgment pursuant to Rule 60(b)(2) or (3) F.R.C.P. within one year of its entry by the court; or (2) that McCook, Turnbull, and Lynn conspired to suppress relevant documents prior to trial and that the government, though not a party to this conspiracy, was aware of the suppression, failed to produce relevant documents from its own files, and finally failed to inform either SoCal or the court of the suppression.

On December 9, 1976, this court ordered that an evidentiary hearing be held on SoCal's motion to set aside the judgment for fraud upon the court, on January 17, 1977. On January 14, 1977, the court denied SoCal's motions to continue the evidentiary hearing and for leave to undertake further discovery as well as its motion to compel the production of certain documents previously withheld by McCook, Turnbull, and the government under claim of privilege.

### Rule 60(b) F.R.C.P.: Fraud upon the Court:

Rule 60(b) F.R.C.P. permits a court to set aside a final judgment for fraud. Rule 60(b)(3) F.R.C.P. provides that a judgment may be set aside for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party". A motion under Rule 60(b)(3) F.R.C.P. must be made not more than one year from the entry of the judgment sought to be set aside. However, Rule 60(b) F.R.C.P. goes on to provide as follows: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, * * * or to set aside a judgment for fraud upon the court". In the instant action, SoCal did not file its motion within one year of entry of this court's judgment. As a result, SoCal's motion is not cognizable under Rule 60(b)(3) F.R.C.P. The motion can be granted only if SoCal can demonstrate "fraud upon the court".

The type of behavior required to set aside a judgment for fraud upon the court in the Ninth Circuit is as follows:

"In order to set aside a judgment or order because of fraud upon the court under

Rule 60(b), F.R.C.P., 28 U.S.C.A., it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refining Co. v. Universal Oil Products Co.,* 169 F.2d 514 (3rd Cir. 1948). The motion to set aside on this ground is addressed to the sound discretion of the trial court. *Title v. United States,* 263 F.2d 28 (9th Cir. 1959); *Siberell v. United States,* 268 F.2d 61 (9th Cir. 1959). And the burden is on the moving party to establish fraud by clear and convincing evidence. *Atchison, Topeka & Santa Fe Ry. Co. v. Barrett,* 246 F.2d 846 (9th Cir. 1957)." *England v. Doyle,* 281 F.2d 304, 309–310 (9th Cir. 1960).

Moreover, the alleged fraud must have "prevented the losing party from fully and fairly presenting his case or defense." *Keys v. Dunbar,* 405 F.2d 955, 957–958 (9th Cir. 1969).

A widely adopted definition of fraud upon the court is that cited in Moore's *Federal Practice,* which states that such fraud should:

" . . . embrace only that species of fraud which does or attempts to defile the court itself, or is fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud *inter partes,* without more, should not be fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action." 7 Moore's *Federal Practice,* § 60.33, p. 515 (2d ed. 1975).

The Ninth Circuit, in commenting upon this definition, has stated that " . . . the phrase 'fraud on the court' should be read narrowly, in the interests of preserving the finality of judgments, which is an important legal and social interest." *Toscano v. CIR,* 441 F.2d 930, 934 (9th Cir. 1971). Moore's *Federal Practice* further warns that if the concept of fraud upon the court is not narrowly construed, "but is ballooned to include all or substantially all species of fraud . . . then the time limitation upon 60(b)(3) motions will be meaningless." 7 Moore's *Federal Practice,* 560.33, p. 511 (2d ed. 1975).

■ Finally, it should be noted that fraud upon the court most often refers to fraud perpetrated by an *adverse* party. The Supreme Court has described the nature of an action based upon such a claim as one brought because

" . . . by reason of something done by the successful party to the suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent . . . these and similar cases which show that there has never been a real contest in the trial or hearing of the case are reasons . . . to set aside or annul the former judgment or decree, and open the case for a new and fair hearing." *U. S. v. Throckmorton,* 98 U.S. 61, 65, 25 L.Ed. 93 (1878).

Further, perjury by a non-party witness by itself does not constitute fraud upon the court. *Serzysko v. Chase Manhattan Bank,* 461 F.2d 699, 702 (2d Cir. 1972); relying on, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* supra, 322 U.S. at 245, 64 S.Ct. 997. In addition, at least one court has held that allegations of non-disclosure during pretrial discovery are not sufficient to support an action for fraud on the court. *H. K. Porter Co. Inc. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir. 1976); citing 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2870, p. 254 (1973).

■ In summary, in order for SoCal to prevail on its motion to set aside the judgment for fraud upon the court, SoCal must prove the following by clear and convincing evidence:

(1) An unconscionable scheme or plan

(2) by McCook, Turnbull and/or Lynn

(3) of which the government was aware or in which it participated

(4) designed with intent to deceive or improperly influence the court

(5) by the suppression of documents material to SoCal's defense, and

(6) with the result that SoCal was prevented from fully and fairly presenting its defense in the government case.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Trial of this action having been completed on September 28, 1972, the Court having entered its Findings of Fact and Conclusions of Law on October 26, 1972, a Final Judgment having been entered on December 14, 1972, the Supreme Court having affirmed the Final Judgment on June 4, 1973, the Plan for Sharing the Petroleum Storage Facilities in American Samoa having been approved by the Court on April 9, 1975, and the defendant SoCal having moved this court pursuant to Rule 60(b) F.R.C.P. to have the Court set aside its Final Judgment for fraud upon the Court, an evidentiary hearing having been held by the Court on January 17, 1977, and the Court having considered the pleadings, evidence, briefs and arguments, and being fully informed,

The Court, in support of its denial of SoCal's motion to set aside the Final Judgment, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

A. With regard to SoCal's allegation that the Government's post-trial failure to provide it with 14 enclosures to a letter of Raymond C. Turnbull dated October 4, 1973, constitutes fraud upon the Court:

1. On October 24, 1973, at a hearing in American Samoa on SoCal's plan for sharing the GAS petroleum facilities, this Court instructed the Government to disclose to SoCal, all letters containing comments on SoCal's plan. [A.459–462].*

2. Such comments had been received by the Government in letters from the following persons:

(a) Hawaiian Independent Refinery, Inc. dated August 21, 1973: [A.467]

(b) Union Oil Company of California, dated September 10, 1973; [A.469]

(c) Seaways International Engineering Corporation, dated October 4, 1973 (by Raymond C. Turnbull, Vice President); [A.468]

(d) Continental Oil Company, dated October 15, 1973. [A.466].

3. Copies of the letters containing the aforesaid comments were sent to the Court and to SoCal, pursuant to the Court's instructions, on November 28, 1973. A letter from Shell-New Zealand to Governor Haydon of American Samoa had already been produced at the hearing. [A.464–465].

4. Accompanying the letter comment from Raymond C. Turnbull [A.436], which had been received prior to the hearing in Samoa, were 14 enclosures consisting of 12 documents and 2 pictures. [A.437–457]. Turnbull's letter noted on its face that "14 enclosures" were attached, and it described them as some correspondence with the Dillingham Corporation on the feasibility of Turnbull's proposal to dredge Nu'Uli Lagoon (Tafuna Bay) as a site for alternate petroleum storage facilities and other industrial uses. [A.436]

5. Turnbull's long-standing proposal for dredging Nu'Uli Lagoon (Tafuna Bay) as an alternative to developing new facilities in Pago Pago Harbor, was known to SoCal long prior to the trial. It was referred to in documents utilized by Standard during pretrial discovery. Exhibits concerning the proposal were put into evidence by Standard at the trial and Governor H. Rex Lee, a government witness, testified on direct examination and cross-examination concerning the proposal [Tr.223–224, 296–300.] SoCal introduced into evidence at the trial the following exhibits concerning the same matter during the years 1963–1965:

* "A" refers to SoCal's Appendix to its Supreme Court Motion to Recall Mandate, which is part of the record in this proceeding.

D–39–G, D–39–H, D–39–M, D–39–P, D–38–A, D–39–V, D–39–W, D–34–C and D–34–T.

6. None of the 14 enclosures to Turnbull's letter of October 4, 1973, commented upon SoCal's post-trial plan for sharing the GAS storage facilities in the Pago Pago Harbor, which was the subject of the Court's instructions to the Government. [A.461–462, 437–457.]

7. The Government made no attempt to conceal from SoCal the existence and nature of the 14 enclosures, which was apparent on the face of the letter produced to SoCal. [A.436.]

8. Although SoCal was aware of the 14 enclosures, it made no request to inspect them.

9. The 14 enclosures do not constitute new evidence but are cumulative to evidence introduced by SoCal at the trial. They are not material to the issues in the case. [D–34–C, D–34–T, D–38–A, D–39–G, D–39–H, D–39–M, D–39–P, D–39–V, D–39–W.]

10. In the context of the entire record, none of the 14 enclosures presents any material information which was unavailable to SoCal at the time of the trial, and, in any event, they are not exculpatory.

11. As far as Finding No. 67 is concerned, the evidence shows that:

(a) McCook made a proposal to enter the Samoan market in 1965 [GX 228] and was prevented from doing so by SoCal's dominant position, its illegal combination and conspiracy with the canners and its illegal requirements contracts. [TR.2073, 2074.]

(b) Shell made several attempts to enter the Samoan market and was also prevented from doing so by SoCal's dominant position, its illegal combination and conspiracy with GAS officials and the canners and the illegal requirements contracts. [A.763, 767–768, 774, GX 72, GX 193, GX 156, GX 157, GX 207, GX 143, GX 158, GX 210, GX 213.]

12. The 14 enclosures provide no basis for altering any finding of fact made by the Court following the trial.

B. With regard to SoCal's allegation that the Government failed to produce documents delivered to it by Turnbull, prior to trial:

1. There is no credible evidence that the Government failed to produce for SoCal's use during the trial any documents delivered to it by Turnbull.

(a) At a short meeting on October 29, 1969, Mr. Turnbull delivered 3 files of correspondence to the Government for copying in Washington, D. C., upon the condition that they be promptly returned to him. A handwritten receipt for these 3 files of correspondence was provided to Mr. Turnbull at the time. [A.696–697, 704–705, A.273.]

(b) On November 3, 1969, the 3 files of correspondence were returned to Mr. Turnbull by certified airmail with a covering letter requesting that their receipt be acknowledged, and Mr. Turnbull acknowledged their receipt on November 18, 1969. [A.274–275.]

(c) On October 23, 1969, SoCal filed and served upon the Government a motion for production of documents pursuant to Rule 34 F.R.C.P. [A.267–270.] By agreement of the parties, the Government made available to SoCal photo copies of certain known documents called for by SoCal, provided photocopies of all non-privileged third party documents received prior to trial and included extensive additional factual information and documents with its responses to SoCal's Requests for Admissions and Interrogatories. [A.276–277, 280–281, 283.] Copies of the Turnbull documents in the Government's possession, i. e., TU–1 to TU–100, were transmitted to counsel for SoCal on April 13, 1970, with Turnbull's consent. [A.283.]

(d) During its pre-trial discovery, SoCal took depositions of Mr. Turnbull, his attorney, Richard B. Lynn, and his backer, William R. McCook. During said discovery, SoCal repeatedly sought to determine whether there were documents other than those designated TU–1 to TU–100 in Mr. Turnbull's files, but both the Government and SoCal were assured repeatedly and unequivocally by Mr. Lynn that neither Turn-

bull nor McCook had further documents responsive to SoCal's deposition subpoenas duces tecum. [A.328, 406, 409–414, 425.]

(e) The Government assured counsel for SoCal on April 19, 1971, and May 13, 1971, that the Government could recall no documents provided to it by Mr. Turnbull other than those returned to Mr. Turnbull, marked TU–1 to TU–100, and provided to SoCal. [A.408, 417–418, 422.]

(f) On May 18, 1971, the Government received a letter from counsel for SoCal in which he stated that SoCal would not pursue the matter of additional Turnbull documents further. [A.425.]

(g) On July 20, 1973, following affirmance of the Final Judgment by the United States Supreme Court, the Government, in the course of returning photocopies of the documents to third parties, sent Mr. Turnbull photocopies of TU–1 to TU–100 on the assumption they might be of some use to him, and again Mr. Turnbull acknowledged their receipt. [A.431, 432.]

(h) The above chronology has been affirmed in sworn affidavits dated February 19, 1976, and March 10, 1976, submitted to Judge Harry Pregerson of the United States District Court for the Central District of California in support of a motion by the Government for a protective order that notices of deposition be vacated and discovery not be had pursuant to subpoenas duces tecum served upon Government counsel and the Department of Justice by SoCal on February 6, 1976. Moreover, the Government provided sworn answers to all questions posed by SoCal in the Central District proceeding concerning the circumstances under which the Government obtained the Turnbull documents, and also voluntarily produced copies of those responsive non-privileged documents not previously sought by or provided to SoCal and of certain responsive handwritten notes as to which the Government did not assert any privilege. [A.694–711.]

(i) At SoCal's request, Judge Pregerson reviewed *in camera* all 16 documents withheld by the Government on claims of privilege and upheld those claims in a ruling on June 30, 1976, that all documents submitted by the Department for *in camera* review were not discoverable by SoCal. This ruling was re-affirmed on September 24, 1976. [Exhibits 31, 34 to 12/23/76 SoCal Motion.]

(j) Government counsel before Judge Pregerson in open Court affirmed his belief that the Government had not prior to trial been provided with the new documents produced by Turnbull and McCook in the private action, and that had they been produced to the Government prior to trial, they would have been marked similarly to TU–1 to TU–100. [Exhibit 36 to 12/23/76 SoCal Motion, pp. 26–27, Transcript of April 19, 1976.]

(k) Until more than a year after the trial had been completed, the Government never received any documents from Raymond C. Turnbull other than those designated as TU–1 to TU–100. The Government has never received any documents from William R. McCook. [A.702–703, 710.]

(*l*) The Government had no knowledge that Turnbull or McCook or their representatives had failed to turn over any relevant documents. [A.696.]

(m) SoCal's reliance upon Mr. Turnbull's ambiguous and often contradictory deposition testimony in the private action provides no basis for a factual conclusion, in the face of the Government's showing, that the United States failed to produce documents delivered to it prior to trial by Turnbull. [A.273, 274–275, 283, 328, 406, 409–414, 408, 425, 417–418, 422, 431, 432, 694–711.]

C. With regard to the appearance of new documents in the private case:

1. The Government was not aware at trial that any relevant non-privileged documents had not been made available to the parties in the Government case. [A.696.]

2. Documents were produced by McCook and Turnbull in the private case that were not made available to the parties in the Government case. [A.115–125, 138–145, 148–163, 166–190, 193–230, 234–242.]

3. Raymond Turnbull was not called as a witness at the trial and the Court did not

rely upon any of his deposition testimony to support its Findings of Fact. [A.758–778.]

4. Only in finding that McCook had been foreclosed from the American Samoan market by SoCal's dominant position, its illegal combination and conspiracy with GAS officials and the canners and the illegal requirements contracts, did the Court rely, and then only in part, upon any document from Turnbull's file, and that document was McCook's proposal to enter the American Samoan market in August, 1965 [GX 228 (A.78–80)].

5. In finding that Shell had been foreclosed from the American Samoan market by SoCal's dominant position, its illegal combination and conspiracy with GAS officials and the canners and the illegal requirements contracts, the Court relied upon trial testimony and numerous trial exhibits which proved that as late as 1971, Shell was still unable to enter the market. [A.774.]

6. The new documents disclose no facts which in any way detract from the overwhelming proof of SoCal's violations of the Sherman Act. [Exhibit 2, Government's Brief of 1/7/77.] They do not bear upon SoCal's illegal combination and conspiracy with certain GAS officials, and the canners, or upon its illegal requirements contracts. [A.759–771.]

7. Neither McCook, Turnbull, nor Lynn knowingly failed to produce documents responsive to SoCal's subpoenas and requests for production in the government case.

8. Neither McCook, Turnbull, nor Lynn knowingly participated in a scheme or plan to mislead the court by failing to produce responsive documents· in the government case.

D. SoCal has brought this motion vexatiously and for oppressive reasons.

## CONCLUSIONS OF LAW

■ 1. SoCal has failed to make out a prima facie showing of fraud upon the court.

2. No proof of fraud upon the Court has been presented. There is no evidence of an unconscionable plan or scheme designed to improperly influence the Court in its decision. Consequently, the Final Judgment cannot be set aside. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 332 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *England v. Doyle,* 281 F.2d 304, 309–310 (9th Cir. 1960); *United States v. International Telephone and Telegraph Corp.,* 349 F.Supp. 22, 29 (D.Conn.1972); aff'd sub nom. *Nader v. United States,* 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973); 7 Moore's *Federal Practice,* ¶ 60.33, p. 515 (2d ed. 1975).

■ 3. SoCal has not been denied due process of law. There was overwhelming proof at trial of SoCal's violation of Section 3 of the Sherman Act, which derived in large part from its own witnesses and its own documents. The so-called new post-trial evidence cited by SoCal presents no information which was unavailable to SoCal at the time of the trial. Had it been available at trial, it would not have changed the result, or the finding that McCook was excluded from the Samoan market by SoCal's violation of the Sherman Act. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ 4. SoCal having brought this motion vexatiously and for oppressive reasons, the Government is entitled to its reasonable attorneys' fees and expenses incurred in the defense of this motion. *Alyeska Pipeline Serv. v. Wilderness Soc.,* 421 U.S. 240, 259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Accordingly, it is hereby ordered that SoCal's motion to set aside the judgment be denied. It is further ordered that the Government submit affidavits to the court within fifteen days setting forth the attorneys' fees and expenses incurred by it in the defense of this motion.